STATE OF NEW JERSEY, BY THE COMMISSIONER OF
TRANSPORTATION, PLAINTIFF-APPELLANT, v. WIL-
LETT HOLDING COMPANY, A CORPORATION OF THE
STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued November 8, 1972—Decided December 18, 1972.

*Mr. Richard L. Rudin,* Deputy Attorney General, argued the cause for appellant (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Alfred L. Nardelli,* Deputy Attorney General, of Counsel; *Mr. Rudin,* on the brief).

*Mr. J. Mortimer Rubenstein,* argued the cause for respondent (*Messrs. Rubenstein, Sherwood, Faro & Ferraillo,* attorneys; *Mr. Rubenstein,* on the brief).

The opinion of the Court was delivered by

MOUNTAIN, J. This is a condemnation case involving a partial taking. Both parties appealed from the commissioners' award; a jury trial in the Law Division resulted in judgment in favor of the landowner in the amount of $634,500. Upon the State's appeal the Appellate Division affirmed with one judge dissenting. 118 *N. J. Super.* 108 (App. Div. 1972). Plaintiff appealed to this Court as of right. *R.* 2:2–1(a).

The case presents a single, narrow issue. At the time the State filed its declaration of taking, defendant was in process of constructing a nursing home on the premises to be condemned. The parties stipulated that, without taking

into account the item about to be mentioned, the value of the partially completed improvement was $314,634. We understand this to be a total of all defendant's actual cost figures, omitting only the sum of $43,450, an amount expended to arrange for construction and permanent financing. Defendant took the position that the completed financial arrangements, which included F. H. A. approval and guarantees as to the proposed construction and permanent mortgages, increased the value of the property by at least the amount spent in procurring the financial commitments. The State disagreed, arguing that this expenditure is non-compensable. There was evidence that the financial commitments could be assigned to a purchaser.

The trial judge ruled that testimony as to defendant's expense in making these arrangements was admissible. In his charge he instructed the jury that they might take this outlay into account in reaching their verdict, if they found as a fact that it produced some increment in value. The majority of the Appellate Division approved the judge's evidentiary ruling as well as his charge. The dissenting member of the court, while conceding that ". . . the jury could consider whether the existence of the mortgage commitments enhanced the value of the land and by what amount . . .," 118 *N. J. Super.*, at 111, *supra*, nevertheless was of the opinion that such increment in value could not be shown by introducing evidence of direct costs.

There are cases supporting the view of the Appellate Division that evidence may be received of financial arrangements which can be made available to a purchaser, as well as approved architects' plans, completed feasibility studies and the like, in a condemnation proceeding involving an uncompleted structure, as presenting particular elements of value which would not otherwise be present. *In Re Site For City-Aided Low-Rent Housing Project,* 197 *Misc.* 70, 89 *N. Y. S.* 2d 855 (Sup. Ct. 1949) (F. H. A. guarantee of construction and permanent mortgages on partially completed apartment building) ; *Rustcon Developers, Inc. v. State,* 33 *A. D.* 2d

582, 304 *N. Y. S.* 2d 287 (1969) (approved architect's plans for motel); *Coral-Glade Co. v. Board of Public Instruction,* 122 *So.* 2d 587 (Fla. Dist. Ct. of App. 1960) (completed mortgage financing arrangements may enhance value; dictum); *State v. Chang,* 50 *Haw.* 195, 436 *P.* 2d 3 (1967) (feasibility study). In these cases the evidence of actual cost of making the financial arrangements seems uniformly to have been admitted in evidence. In *United States v. Savannah Shipyards, Inc.,* 139 *F.* 2d 953 (5th Cir. 1944), reh. den. 140 *F.* 2d 863 (5th Cir. 1944) the government condemned a partially completed shipyard. Evidence as to the cost of financing the venture was excluded, but apparently only because the particular attempt at financing had been unsuccessful and hence could not in any way have enhanced value.

While we agree with the result reached by the majority of the Appellate Division, we prefer to rest our decision upon a somewhat different basis. As to the partially completed nursing home, the parties in effect agreed to use reproduction cost as the determinant of value. This was a sensible approach. The comparable sales method of valuation was clearly unavailable; no one could point to sales of other similar, partially completed nursing homes. Under such circumstances resort to replacement cost is entirely appropriate. *State v. Burnett,* 24 *N. J.* 280, 290–293 (1957). Furthermore the reproduction cost figures were the more reliable and less subject to dispute because the newness of construction eliminated any need to consider depreciation and both parties agreed that a nursing home was an entirely suitable use to which to devote this property.

We see no reason why the reproduction cost method should not have been pursued further to include the expense necessarily incurred in effecting financing arrangements. It was not disputed that such charges are customary in an undertaking of this sort, nor was it argued that these charges were excessive, given the condition of the money market at the time. Furthermore it was established that no funds would have been advanced by the mortgage lenders until the

fees, totaling $43,450, had in fact been paid in full. Thus construction could not have got under way but for this payment. Additionally we note that for purposes of determining value as a basis for a proposed loan guarantee with respect to new construction, the F. H. A., as a matter of practice, includes all such financing charges. *Multi-Family Reports and Forms Catalogue: A HUD Handbook,* HPMC-FHA 4200.15, p. 2264–13, item 53, *et seq.* We think this expense, but for which construction could not have gone forward, was a proper charge in calculating reproduction cost.

 It seems well settled that in addition to direct outlay for labor and materials, replacement or reproduction cost will normally include financing charges. These may take the form of interest payments actually made as well as interest calculated on equity investment during the construction period. *Jahr, Law of Eminent Domain: Valuation and Procedure* (1953) § 157; 2 *Orgel, Valuation Under the Law of Eminent Domain,* (2d ed.) §§ 193, 194. We think, as well, that they may include the cost reasonably expended in procuring firm financial commitments. Recent discussions of the subject support this view. *Kahn, Case, Schimmel, Real Estate Appraisal and Investment* (1963) 159; *Encyclopedia of Real Estate Appraising* (Friedman ed. 1968) 85.

There is, too, a logical inconsistency in not employing the reproduction cost method throughout. As to items of expense other than the financing charges, consistent use was made of actual costs. It was not, for instance, asked by how much the structure was enhanced in value by the inclusion of a completed heating system or the construction of a roof. Rather the cost of each was simply included in the total of actual expense. The same should have been done with the financing charges.

 Although this was not the thesis upon which the issue was presented to the jury, a careful reading of the trial judge's charge makes clear that pursuant to the instructions given, the jury could not have found a greater value than $43,450 as to the element of financing charges. They might

have found less. In view of the composite nature of the verdict, which in addition to the value of the improvement included also the value of the land taken as well as severance damages to the remainder, we cannot tell. Since only the State sought review, there is no reason to disturb the original verdict.

The judgment of the Appellate Division is accordingly affirmed.

*For affirmance* — Chief Justice WEINTRAUB, Justices JACOBS, HALL and MOUNTAIN, and Judges CONFORD and SULLIVAN—6.

*For reversal*—None.