## WARWICK MUSICAL THEATRE, INC.

### v.

### STATE of Rhode Island.

### No. 85–170–Appeal.

Supreme Court of Rhode Island.

May 20, 1987.

---

Edward P. Manning, Albert W. West, Providence, Charles Butterfield, Jr., Warwick, for plaintiff.

Louis M. Cioci, Johnston, Francis J. Pickett, East Providence, for defendant.

## OPINION

SHEA, Justice.

This case involves cross-appeals from a Superior Court judgment following a nonjury trial for the assessment of damages resulting from a partial taking by condemnation. We affirm.

Warwick Musical Theatre (the theater) filed a petition against the state for assessment of damages sustained by the theater. The partial taking consisted of a strip of land approximately 40 feet in depth fronting on Quaker Lane in Warwick, Rhode Island, and running the entire length of the theater's property. The parcel taken consisted of 17,647 square feet of land, improved by asphalt pavement and two fences, fronting on Quaker Lane. In addition, the state took two easements contiguous to both the theater's remaining land and to each other. One was a permanent easement encompassing 911 square feet to allow for aerial telephone and electrical wiring. The other was a 6,567-squarefoot temporary easement that would allow state personnel access to the theater's land to restore and improve the theater's property. The state built a sidewalk in front of the theater and installed a stone retaining wall with ramps to provide for ingress into and egress from the theater property. The theater was paid $74,080, which would be deducted from any award made by the court.

The theater and the state each produced one expert witness. Both experts began their appraisal by dividing the property into three theoretical zones measured by their distance from Quaker Lane. The theater's expert employed a "before and after" valuation method to determine damages to the theater property. The before-and-after calculation determines the difference between the value of the entire tract before the taking and the value of the entire tract after the taking. The difference equals the amount of compensation. 7A Nichols, *The Law of Eminent Domain* § 12.02 [3] [a] (rev. 3d ed. 1985). The state's expert determined damages through the use of the "market data" or comparable-sales method. A brief description of each valuation approach will be helpful to our analysis of the case.

The theater's expert concluded that the area consisting of the first 200 feet in depth by the entire width of the property along the highway was the most valuable and used three comparable sales to determine its value. In this valuation he included his specific evaluation of the improvements located on this first parcel, namely, the fences and the asphalt. The next two zones, the second 200 feet in depth and the remainder of the parcel, were similarly evaluated at lesser amounts per square foot. Adding the values of all three zones he testified that the value of the theater property prior to the taking, excluding buildings, was $611,600.

Next, the theater's expert assigned a figure to the additional incremental value provided to the entire parcel by the improvements that consisted of a theater-in-the-round with accessory structures and a racquetball-club building. He determined that the improvements were special-purpose buildings and testified that because he could not find comparable sales figures, he had computed replacement cost less depreciation, utilizing the actual construction costs submitted by the theater's accountant. He consulted Boeckh's tables to arrive at a measure of inflation or deflation in the construction industry and then determined the value of the building after depreciation. The expert determined that the total value of the land and buildings prior to the taking was $2,216,600.

In determining the value of the land and buildings after the taking, the theater's expert ignored the temporary easement as insignificant compared to the overall importance of the taking. He combined the permanent easement with the taking of the fee, however, because it is located on the Quaker Lane side of the retaining wall and could not be utilized by the theater for any useful purpose. Each depth zone was devalued carrying lower per-acre values because of the loss of frontage resulting from the taking. He testified that both the theater and the racquetball facility also suffered devaluation because of the loss of frontage. Specifically, the expert noted that prior to the taking the entire frontage was at highway level and could all be utilized but that after the taking, because of the change in grade and the need now to use ramps to enter and exit the property, patrons' ability to maneuver their vehicles was limited. Vehicles entering the property could not move to the right or left until they moved beyond the ramp. In the case of the theater, there was no longer room for cars to drive up to the box office without blocking the entrance lane from the ramp. The racquetball building was now high above the highway because of the change in grade, thereby decreasing its value. In conclusion, the theater's expert determined that the value of the property after the taking was $1,810,300, amounting to a total loss to the theater of $406,300 as a result of the condemnation.

The state's expert agreed that the highest and best use of the premises was its present use as a theater and racquetball facility and utilized the "whole value to whole value" method to determine the fair-market value of the parcel actually taken from the entire tract. He further stated that he used the comparable-sales method to determine the value of the land only. He "found no buildings being taken, and therefore, there was no practical application for the cost approach." For this reason, the state's expert did not consider severance damages since there was no tak-

ing of any part of the improvements. His total valuation therefore included only loss to the land itself. He then described his depth analysis of value, utilizing comparable sales, three of which were the same comparable sales as were used by the theater's expert, and made adjustments to the comparable-sales figures to determine what he considered to be the fair-market value per square foot of the subject land. Like the theater's expert, the state's expert found the first 200 feet in depth fronting on Quaker Lane to be prime commercial property, with values per square foot decreasing relative to their distances from Quaker Lane. In his attempt to determine the value of the third-depth zone, furthest removed from the highway, however, the expert used comparables that were, by his own description, "back land." The comparables employed had no frontage, were undeveloped and were each served by a small roadway or right of way. No adjustment was made to these parcels and consequently the rear acreage of the subject property received a valuation of $0.14 per square foot as opposed to the $0.95–per-square-foot valuation reached by the theater's expert. The state's expert then determined an average value per square foot of the entire parcel rather than incorporate the different rates assigned to each zone. Adding values for the land comprising the permanent and temporary easement and allowing for the cost of the fences and asphalt contained on the property taken in fee, the state's expert determined total damages to the theater to be $32,113 notwithstanding the fact that the state had already awarded the sum of $74,080 to the theater as compensation for the taking.

Although the trial justice recognized as acceptable the method of valuation employed by the state's expert, he did not accept his selection of comparable sales. Instead, he accepted the values assigned to the unimproved land by the theater's expert and employed that expert's use of the before-and-after rule to determine damage to the property as a result of the condemnation. The trial justice determined the property to be a one-use tract, utilized for commercial purposes. He reasoned there-fore that the part taken did not have a different-use value from the remaining part of the tract. Consequently, rather than add the incremental values of each zone as was done by the theater's expert, the trial justice arrived at a uniform price throughout the entire tract by averaging the values attributed to each zone as was done by the state's expert. He then applied the percentages of depreciation employed by the theater's expert, finding total damages to the unimproved tract of $129,500. The trial justice determined the values of the taking of the permanent aerial easement and of the temporary easement to be negligible.

The trial justice rejected the testimony of the state's expert that there was no severance damage to the land not taken. He found both the theater building and the racquetball building to be special-purpose facilities, thereby justifying the theater expert's method of valuing the improvements through a cost-of-production-minus-depreciation analysis. He found, however, no severance damage to the racquetball building. Rather, he found that patrons of the racquetball facility would easily adjust to the change in parking or traffic patterns. On the other hand, the trial justice accepted the severance damages assigned to the theater building by the theater's expert, reasoning that providing parking for that facility is of a different nature and character than for the racquetball building. He found that the ability of the owners of the theater to handle the traffic density, patterns, and time restrictions incidental to its operation was made more difficult by the taking of a sizable portion of the front parking area. The trial justice concluded that the theater sustained a total damage to its property, including improvements, as a result of the condemnation of $219,000. Subtracting the amount of $74,500 already paid by the state, he determined a balance due to the theater of $144,500.

This court accords great weight to the findings of fact of a trial justice sitting without a jury. *Cunningham v. Marcello*, 106 R.I. 400, 404, 260 A.2d 451, 453 (1970). Similarly, resolution of mixed questions of

law and fact, as well as the inferences and conclusions drawn from the testimony and evidence, are entitled to the same deference. *Miller v. Dixon Industries Corp.*, 513 A.2d 597, 601 (R.I. 1986); *Morgan v. City of Warwick*, 510 A.2d 1297, 1299 (R.I. 1986). Unless the record indicates that the trial justice misconceived or overlooked material evidence or was otherwise clearly wrong, we shall not disturb his findings on appeal. *Briehler v. Poseidon Venture, Inc.*, 502 A.2d 821, 822 (R.I.), *cert denied,* — U.S. —, 106 S. Ct. 2884, 90 L. Ed. 2d 973 (1986).

The state contends that the trial justice erred in his determination that the theater was a special-use property. Consequently, the state argues, the comparable-sales method should have been used instead of the actual costs of construction. The state also objects to the method used by the theater's expert in determining the actual costs of constructing the theater. It contends that the use of construction payments over a ten-year period, adjusted to the date of condemnation by consulting Boeckh's cost-analysis tables, is not a proper method of establishing reproduction costs. Furthermore, the state argues that even if this appraisal method were proper, the theater's expert, as a real estate appraiser, was not qualified to testify with regard to construction costs.

■■ The testimony of the theater's expert that there was no comparable sale of a theater-in-the-round is uncontradicted in the record. The state made no attempt to assess the value of the theater building, believing its value to have been unaffected by the condemnation. Significant factors that affect comparability include location and character of the property, proximity in time of the comparable sale, and the use to which the property is put. *Corrado v. Providence Redevelopment Agency*, 117 R.I. 647, 654, 370 A.2d 226, 230, *cert denied,* 434 U.S. 807, 98 S. Ct. 37, 54 L. Ed. 2d 64 (1977). The availability of such comparable sales is a question addressed to the discretion of the trial justice whose determination will be reversed only if " 'palpably or grossly wrong.' " *Thomas B. Gray,*

*Inc. v. Providence Redevelopment Agency*, 114 R.I. 370, 374, 333 A.2d 143, 145 (1975); *Hervey v. City of Providence*, 47 R.I. 378, 380, 133 A. 618, 619 (1926).

■ Although the comparable-sales method of determining fair-market value is the preferred method of valuation in condemnation proceedings, it is within the discretion of the trial justice to depart from this method when he finds that the subject property is unique or special purpose. *O'Donnell v. State*, 117 R.I. 660, 665, 370 A.2d 233, 236 (1977). Again, "[t]his finding is entitled to great weight and will be reversed only if the trial justice was 'palpably or grossly wrong.' " *J.W.A. Realty, Inc. v. City of Cranston,* 121 R.I. 374, 381, 399 A.2d 479, 483 (1979). In light of the testimony regarding the unique character and use of the theater building, it appears that the trial justice was not clearly wrong in his determination that the facility was used for a special purpose that precluded the use of comparable-sales valuation.

■ The trial justice then accepted the method of valuation employed by the theater's expert. When evidence of comparable sales is not available or is inappropriate, the reproduction cost of the building less depreciation is admissible as proof of market value. *Hall v. City of Providence*, 45 R.I. 167, 168–69, 121 A. 66, 67 (1923). In fact, the only evidence before the trial justice regarding valuation of the theater building was the testimony of the theater's expert regarding adjusted construction costs. *See Assembly of God Church of Pawtucket v. Vallone*, 89 R.I. 1, 11, 150 A.2d 11, 16 (1959) (trial justice properly based determination of damages only on evidence before him: reproduction cost less depreciation). In this case, the use of reproduction cost minus depreciation fulfills the court's ultimate concern in condemnation cases: that of providing just compensation. *See Corrado,* 117 R.I. at 657, 370 A.2d at 231. We are of the opinion that he was justified in accepting this method of valuation in the circumstances, and the state has not convinced us that he erred in this respect.

█ In his testimony regarding the replacement cost of the theater, the theater's expert used the actual-cost-of-construction figures as provided by the theater's accountant. He consulted the E.H. Boeckh system of cost analysis to obtain a time-modifying factor in order to bring the actual costs up to date. Testimony regarding the actual expenditures made to improve the land is relevant to a determination of damages sustained because of a condemnation and is admissible as a consideration in such assessment. *Hall*, 45 R.I. at 168–69, 121 A. at 67. The trial justice, sitting as factfinder, determines the weight to be given the testimony. The state presented no contradictory evidence to dispute the values determined by the theater. Testimony was presented at trial describing Boeckh's tables as a generally accepted cost-analysis table used in the construction and real estate fields and their percentages appear to be as reasonable as any available to assessors in condemnation proceedings. It is the obligation of the trial justice in condemnation proceedings to determine which evidence is more convincing and to make factual determinations based on that evidence. *McHale v. Director of Public Works*, 100 R.I. 770, 772, 219 A.2d 766, 767 (1966). We find no clear error in the trial justice's use of this testimony.

Finally, the state argues that the trial justice erred in awarding damages for the taking of the permanent aerial easement. Our reading of the trial justice's decision, however, reveals that he specifically found the value of the taking of the easement to be negligible and we therefore see no need to address this contention.

On cross-appeal the theater argues that the trial justice erred in his determination that the property constituted a single-purpose tract and therefore should not have valued it at an average cost per acre over the entire tract. In addition, the theater contends that the finding of no severance damage to the racquetball facility was also error. It argues that the trial justice mistakenly based his decision on loss of access rather than on the loss of frontage that left the building high above the street level.

█ The unitary-use concept is appropriate in two situations: first, to support the determination of value of the parcel taken, that is, whether it is so related to the remaining land as to have its value dependent on that land as a proportion of the whole, and second, to support the allowance of severance damages to the remaining parcel. 4A Nichols, *The Law of Eminent Domain* § 14.26 at 14–666 (rev. 3d ed. 1985). Severance damages will be allowed if the tract taken and the tract remaining are so inseparably connected in their uses that the taking of one necessarily and permanently injures the other. *See Sasso v. Housing Authority of Providence*, 82 R.I. 451, 459, 111 A.2d 226, 229–30 (1955). It is clear in the case before us that the strip of land taken by the state shares a single use with the remaining property, thereby allowing severance damages where applicable. The existence of a single-use tract does not control, however, the determination of whether to value land on an average price per acre.

██ Properties that are of such dissimilar character as to require valuations for entirely different purposes cannot be regarded as a single tract. *See United States v. 26.81 Acres of Land More or Less*, 244 F. Supp. 831 (W.D. Ark. 1965); *United States ex. rel. Tennessee Valley Authority v. Indian Creek Marble Co.*, 40 F. Supp. 811, 821 (E.D. Tenn. 1941). If this be the case, damage assessment requires not only separate valuations but also proof of individual severance damage suffered by each of the tracts. Although some evidence about damage to the racquetball facility and to the theater was presented to the court, the entire property was assigned a single assessed value by both experts at trial. No evidence was presented regarding the value of the racquetball facility and its land as opposed to the theater and its land. We will not, therefore, consider a separate valuation based on multiple-purpose, separate tracts on appeal. *Peters v. Jim Walter Door Sales of Tampa, Inc.*, 525 A.2d 46 (R.I.1987).

■ The racquetball facility and the theater share space on the same parcel, both are owned by the same entity, and both are used as recreational facilities. What little space exists between the two buildings is used as a single-purpose, common parking area. The determination of whether a parcel constitutes one tract or separate and distinct tracts is a question of fact whether the question involves valuation or the existence of severance damages. *See Sharp v. United States*, 191 U.S. 341, 354, 24 S. Ct. 114, 117, 48 L. Ed. 211, 215 (1903). The evidence amply supports the factual finding of the trial justice that the property constitutes the same tract, meaning that separate valuations of individual parcels is not necessary. The finding of the trial justice that the property enjoys a single use allows an award of severance damages and supports the valuation of the condemned property presented at trial that assigns a value to the condemned portion as it relates to the value of the entire tract.

■ On the question of the trial justice's determination of condemnation damages, experts testifying for both parties agreed that the highest and best use of the property was the commercial use to which it was presently being put. The trial justice determined that this commercial purpose made the property a single-use tract that should be valued at an average price per acre. Although the term "single-use tract" may be out of place in this context, the valuation method employed by the trial justice is not. The general rule, advanced by one commentator, holds that

> "in assessing the value of the land taken as part of the entire tract, it is not proper merely to compute the percentage value of the parcel taken on the basis of a mathematical proration or an artificial average unit value for the entire tract *unless the actualities of the case accord with such average value or justify such mathematical proration.* The part taken may be the most valuable part of the tract from a qualitative viewpoint." (Emphasis added.) 4A Nichols, § 14.26 at 14–667–668.

Both experts agree that the section of land closest to the highway is the most valuable part of this property. When the state took the front portion of the property, it took the most valuable portion. In this case, however, there is no actual loss of the more valuable frontage property because the property immediately behind that taken now becomes the more valuable commercial frontage property. The balance of the remaining land also serves as commercial property in the form of a parking lot whose frontage value becomes important only to early arrivals at the theater. Consequently, the actualities of this case allow the use of an average-price-per-acre analysis. *Cf. Defnet Land & Investment Co. v. State*, 103 Ariz. 388, 390, 442 P. 2d 835, 837 (1968) (ordinarily in case of taking of commercial frontage, acreage to rear promoted to frontage, thus no actual loss in commercial acres).

■ Finally, although damages sustained by property because of a change in grade of an abutting highway are compensable, the mere fact that a change in grade has occurred does not automatically entitle the abutting landowner to payment. The change in grade must first cause compensable damage to the property. Testimony by the theater's expert that the racquetball building lost value simply because the grade change left it higher above street level is not enough. Possible damages resulting from a change in grade may include the deprivation of a means of access or lost parking. The trial justice found, however, that the racquetball facility suffered no such damage. Again, his factual findings are given great weight and will not be overturned unless the record indicates that he has overlooked or misconceived material evidence or is otherwise clearly wrong. *Briehler*, 502 A.2d at 822.

■ We find that his decision exceeds the standard required in eminent-domain proceedings that a trial justice, sitting without a jury, must make findings of fact and conclusions of law. *See J.W.A. Realty, Inc.*, 121 R.I. at 384–85, 399 A.2d at 485; Super. R. Civ. P. 52(a). His opinion clearly shows us that he carefully exam-

ined and weighed the evidence before him and based his decision upon it. Neither the state nor the theater has met its burden of proving that the trial justice was clearly wrong.

For the above-stated reasons the cross-appeals are denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.