DECISION
Before this court is a petition for damages resulting from the Providence Redevelopment Agency's (Agency) condemnation of a parcel of real estate owned by the petitioners. Jurisdiction is pursuant to G.L. 1956 § 45-32-34.
 FACTS/TRAVEL
On December 7, 1999 the Agency acquired, by eminent domain, property located at 307 West Fountain Street, Providence, Rhode Island as part of a project to construct a state of the art public safety complex for the city. Said property was owned by John K. Takian and Raymond H. Gadigian and is recorded as Lot 76 on Assessor's Plat 25. On the same date, the Agency formally recorded its ownership of the property in the land evidence records of the City of Providence.
The Agency and the petitioners have been unable to agree on a satisfactory amount of compensation for the taking of the parcel. A total of three appraisals of the parcel, two ordered by the Agency and one by the petitioners, were conducted between November 17, 1999 and December 10, 1999, each with a different assessment of the fair market value (FMV) of the subject property. On November 17, 1999, separate appraisals were conducted by Andolfo Appraisal Associates and Peter M. Scotti 
Associates on behalf of the Agency. Andolfo's estimate of FMV was $158,000; Scotti's was $175,000. On December 10, 1999, William E. Coyle Jr. Associates, acting on behalf of the petitioners, appraised the FMV of the subject property at $225,000.
On March 13, 2000, the petitioners filed a petition for assessment of damages with this Court and on March 17, 2000 the Agency filed a timely answer. On the same date, the Agency filed its first affirmative defense that its estimate of the subject's FMV constituted full and fair compensation for the taking. Finally, on July 12, 2000 the petitioners filed a motion to expedite proceedings, which was granted on October 13, 2000.
 FAIR MARKET VALUE
It is well-settled in our jurisprudence that certain government agencies in Rhode Island are vested with the power to condemn private property and later acquire it, with some limitations, pursuant to G.L. 1956 § 45-32-24. One of the principal limitations on this power is that the landowner whose property has been taken is due just compensation from the acquiring agency. R.I. Const Art I § 16.
Most often, a justly compensable amount is arrived at by assessing the FMV of the property at the time of the taking. Although there are no rigid criteria for determining FMV, it is generally agreed that the "preferred method for ascertaining the fair market value of land taken by condemnation is the comparable sales method." Capital Properties, Inc., v. State, 636 A.2d 319 (R.I. 1994). The appraiser compares the condemned property with "substantially similar and comparable properties," examining the prices paid on the open market for the latter properties. Serzen v. Director of Environmental Management, 692 A.2d 671 (R.I. 1997).
While the agency taking the condemned property is required to estimate fairly its FMV, the trial justice sitting without a jury engages in a similar analysis if the landowner petitions the Court to review the condemning agency's estimate. Although the trial justice has discretion in determining the FMV of the property taken, some relevant factors can assist the Court. Specifically, the Court should attempt to determine the "highest and best use" of the property in ascertaining what the present market dictates property so used is truly worth. 26 Am. Jur. 2d Eminent Domain § 322 (1996). Additionally, the trial justice should "place the owner . . . in a position as good as, but not better than the position the owner was in before the taking occurred." 26 Am. Jur. 2d Eminent Domain § 295 (1996) (quoting U.S. v. 2.33 Acres of Land,704 F.2d 728 (4th Cir. 1983)). Ultimately, the trial justice makes a credibility determination regarding which evidence is more convincing. Warwick Musical Theatre, Inc., v. State, 525 A.2d 905 (R.I. 1987).
In the case at bar, the Court has been presented with three appraisals of the subject property, each with a different assessment of the FMV. In his appraisal of the subject property, Mr. Coyle begins by noting that the highest and best use of the subject property is commercial C-2 zone. He then employs the comparable sales method to determine its FMV as opposed to the cost method and the capitalization of income method. Mr. Coyle states that the cost method is unreliable in this instance because it focuses on determining the depreciation of property; however, in this case, the subject is obsolescent, and use of this method would not return an accurate indication of the its true value. Mr. Coyle also eschewed the capitalization of income method, which takes the current market price per square foot of similarly situated rental properties and then divides this number by a rate of 10% (which reflects the owner/occupied nature of the subject property). Mr. Coyle compared the subject property to four ostensibly comparable buildings that had recently sold in the city of Providence. The first was an office building on Charles Street, which sold for $360,000. The second, another office building located on Chestnut Street, sold for $175,000. The third, an industrial building, situated on Ernest Street, sold for $237,000. Finally, another industrial building on Sherburne Street sold for $130,000. Additionally, Mr. Coyle made a brief comparison of the subject to three recent land sales in Providence. Sale #1 was a 24,917 square foot parcel at $53.38 per square foot on Weybosset and Snow and Grace Streets, which sold for $1,330,000. Sale #2 was a 36,105 square foot parcel at $80.00 per square foot on the corner of Atwells and Broadway, having sold for $2,900,000. Lastly, sale #3 was a 72,404 square foot parcel at $52.48 per square foot on the corner of Harris and Killingly, which sold for $3,800,000. Consequently, Mr. Coyle estimated the subject's FMV to be $225,000 based on such comparisons.
Mr. Andolfo's appraisal similarly focused on the comparable sales method; however, he also gave equal weight to the capitalization of income method, while focusing little attention on the cost method (for the same reason Mr. Coyle avoided it). He compared the subject with three buildings that had recently sold in Providence. Sale #1 was the same building referenced by Mr. Coyle on Ernest Street. Sale #2 was an industrial building located on Silver Spring Street, which sold for $300,000. Sale #3 was an industrial building situated on Baker Street, having sold for $375,000. Mr. Andolfo's comparisons led him to place the FMV of the subject at $158,000.
Finally, Mr. Scotti's appraisal of the subject considered a host of factors affecting the FMV of the subject. Most importantly, however, Mr. Scotti gave equal weight to the results of the comparable sales and the capitalization of income approaches. Additionally, he noted that while the cost approach is useful in determining the highest and best use of the subject property, Mr. Scotti was reluctant to use it to calculate FMV of the subject for the reasons stated by the other appraisers. Mr. Scotti compared the subject to three recent building sales in the city of Providence. Sale #1 was an industrial building on Baker Street, which sold for $375,000. Sale #2, a commercial type building located on Valley Street, sold for $100,000. Sale #3, another commercial building located on Printery Street, sold for $179,000. Next, Mr. Scotti compared the subject to three rental properties. Rental #1 was a warehouse located on Sutton Avenue in East Providence, the value of which was estimated at $4.25 per square foot (yearly rental value of $26,818). Rental #2, located on Pettaconsett Avenue in Cranston, was a warehouse with a yearly value of $26,400, $4.07 per square foot. Rental #3, a warehouse located on Industrial Lane in Johnston, was estimated to have a value of $3.00 per square foot and a yearly rental value of $18,000. Additionally, Mr. Scotti compared the subject property with three recent land sales in Providence. Land sale #1, an 18,357 square foot part residentially, part commercially zoned parcel on North Main Street, was valued at $9.53 per square foot and sold at $175,000. Sale #2, a 3,000 square foot commercial lot on Atwells Avenue, was valued at $12.50 per square foot and sold for $37,500. Sale #3, a 15,612 square foot commercially zoned parcel located on Washington Street, sold for $86,000 at $5.51 per square foot. Based on these comparisons, Mr. Scotti calculated the FMV of the subject at $175,000.
While it is apparent that the three appraisers employed relatively similar techniques in calculating the FMV of the subject property, some of the appraisals were more exhaustive and more compelling than others. While Mr. Coyle's appraisal of the subject employs the well- accepted comparable sales method, it is somewhat unclear in what way the properties that he examined were comparable to the subject. For instance, while two of the buildings — the Chestnut and Sherburne Street properties — appear relatively similar architecturally to the subject, the other two, which are well-preserved brick structures, seem quite dissimilar to the West Fountain Street property. On the surface, the latter two buildings are in much better physical condition than the subject, a graffiti-covered, primarily cement building in a more economically depressed area of the city. Ultimately, he provides insufficient justification for his overall method of determining the FMV of the subject, and this Court can only speculate as to how he arrived at the final figure of $225,000, which this Court finds somewhat high.
Both Mr. Andolfo's and Mr. Scotti's appraisals are relatively similar in approach and evidence to a greater extent than that of Mr. Coyle the methodology behind their conclusions. Mr. Scotti's appraisal is particularly thorough. Mr. Andolfo articulated why the buildings he surveyed provide an accurate assessment of the subject's FMV. Mr. Andolfo explained how the comparable properties he examined were adjusted in different areas to accurately reflect how the open market perceives such differences in properties. Additionally, he discussed how he adjusted for certain physical differences — superior office facilities of the comparables as opposed to those of the subject — between the comparables and the subject. Appraisal at 10, 11. Mr. Scotti not only compared the subject to properties which sold recently, but also measured various rental properties and land sales against the subject. At each step, Mr. Scotti provided a full explanation of why each type of comparison was performed, as well as how he adjusted for physical differences, and differences in location between the comparables and the subject properties. Additionally, Mr. Scotti provided an in-depth analysis of the socioeconomic background of Rhode Island and how these factors — environmental, societal, geographical, political considerations — affect the state's real estate market. Finally, Mr. Scotti summarized the various data analyzed in his appraisal with a clear explanation of how the combination of the capitalization of income and comparable sales methods returns a reasonable calculation of the FMV of the subject.
The three appraisals before the Court employed somewhat similar approaches in their appraisals — the comparable sales method. Of the three, Mr. Coyle's report was the least persuasive. He provided a cursory evaluation of the subject's FMV. Both Mr. Andolfo and Mr. Scotti provided more complete appraisals of the subject, with Mr. Scotti's being the more compelling.
Consequently, this Court accepts Mr. Scotti's appraisal of the subject property which it finds provides a fair assessment of the property's FMV. Accordingly, this Court determines that the amount of $175,000 represents just compensation for the Agency's taking of the subject property.
Counsel shall prepare an appropriate order for entry.