DECISION
This matter is before the Court on a petition for assessment of damages resulting from the Providence Redevelopment Agency's (Respondent) condemnation of real estate owned by Gilbert Enterprises, Inc. (Petitioner) and designated as Assessor's Plat 25, lot 72 and Assessor's Plat 29, lot 115 of the City of Providence. Jurisdiction is pursuant to § 45-32-34 of the General Laws of Rhode Island.
 FACTS
On December 7, 1999, Respondent acquired by eminent domain, the above mentioned property located at 337 Fountain Street and 284 Dean Street, Providence, Rhode Island, as part of a project to construct a Public Safety Complex for the City. The property was owned by Petitioner, Gilbert Enterprises, Inc., a Rhode Island corporation. At the building on 337 Fountain Street, Petitioner owned and operated a nightclub, under an adult entertainment license, known as "Club Fantasies" (Fantasies). The property at 284 Dean Street was a nearby paved parking lot used by the Petitioner for both patron parking, as well as rental to non-patrons.
The Petitioner filed this action on March 2, 2000. The matter was then placed on the non-jury calendar under priority status. The trial commenced on October 4, 2002 and concluded on October 28, 2002. The Court heard testimony from Frank DeLuca, President of Gilbert Enterprises, Inc.; Roy Schaeffer, its real estate appraiser; as well as Peter Scotti, Respondent's real estate appraiser. Numerous exhibits were also introduced into evidence.
DeLuca testified as to the purchase and development of Club Fantasies, as well as to the use and improvements of the building and parking lot. He testified regarding the adult entertainment license which had to be renewed monthly and to the relocation of Fantasies into an adult entertainment club to a new location shortly before the condemnation. Further, he described the use of the third floor of the building. In this regard, he agreed that the City Building Board had prohibited use of the third floor until a second floor stairway was finished. He acknowledged that he never sought permission to use the third floor since he knew the property was about to be condemned.
Schaeffer placed the value on 284 Dean Street at $165,000.00 and the value on 337 Fountain Street at $1,080.00.00. Scotti treated the two lots as one parcel and placed the value at $540,000.00. Thus, the dispute.
 DISCUSSION
In Rhode Island, certain government agencies are vested with the power to condemn private property and later acquire it pursuant to R.I.G.L. § 45-32-24, 1956 as amended. One of the principal limitations on this power is that the landowner, where property has been taken, is due just compensation from the acquiring agency. Most often, a justly compensable amount is arrived at by assessing the fair market value of the property at the time of the taking. Although there is no rigid criteria for determining fair market value, it is generally agreed that the "preferred method for ascertaining the fair market value of land taken by condemnation is the comparable sales method." Capital Properties, Inc.v. State, 636 A.2d 319 (R.I. 1994), Takian, et al. v. ProvidenceRedevelopment Agency, R.I. Superior Court M.P. No. 2000-1286. The appraiser compares the condemned property with "substantially similar and comparable properties," examining the prices paid on the open market for the latter properties. Serzan v. D.E.M., 692 A.2d 671 (R.I. 1997). If there are no comparable properties, or if the land is otherwise unique, then other methods such as the income approach on the cost to reproduce method may be employed. Assembly of God v. Valone, 89 R.I. 1 (1959),Warwick Musical Theatre, Inc. v. State, 525 A.2d 905 (R.I. 1998). When using the income approach, courts caution that only income generating from the property should be considered and not income from any business on the property. Piasczyk v. Water Resource Board, 108 R.I. 367 (1971),Padula v. Town Council, 97 R.I. 196.
While the agency taking the condemned property is required to estimate fairly its fair market value, the trial justice sitting without a jury engages in a similar analysis if the landowner petitions the court to review the condemning agency's estimate. Although the trial justice has discretion in determining the value of the property taken, certain factors can assist the court. The court should attempt to determine the "highest and best use" of the property in ascertaining what the present market dictates property so used is truly worth. 26 AM JUR 2nd, EminentDomain § 322 (1996). Additionally, the trial justice should "place the owner . . . in a position as good as, but not better than the position the owner was in before the taking occurred." 26 Am JUR 2nd,Eminent Domain § 295 (1996). Ultimately, the trial justice makes a credibility determination regarding which evidence is more convincing.Warwick Musical Theatre, Inc. v. State, supra, Takian v. ProvidenceDevelopment Agency, supra.
Petitioner argues that since there were no comparable nightclub sales, Schaeffer was correct in using the income approach with regard to the building, and that by looking to rents from other nightclubs the value he placed on the building accurately reflects its fair market value especially since it was not artificially inflated by revenues from adult entertainment. It also argues that the comparable sales used by Schaeffer are the best determinants of the value of the parking lot. Finally, it contends that Respondent's appraiser essentially backed into his figures especially by use of Petitioner's gross income and by improperly reducing it to reflect the amount of income due to adult entertainment.
Respondent argues that Scotti's appraisal should be accepted since it used all three methods of appraisal (comparable sales, cost to reproduce and income capitalization) which came within $15,000.00 of each other. Also, that Schaeffer erred in including the unused third floor in his evaluation; and, lastly, that Scotti was correct in lumping the two lots into one parcel, and hence one evaluation, since the building lot had no on-site parking.
The preferred method of real estate appraisal is comparable sales, but as previously stated, where the property is unique or has a special purpose, valuation by income capitalization can be used. Here, despite Respondent's argument to the contrary, both appraisers concluded that because of the lack of sufficient comparable sales, the income approach was the best method for appraising the building. The appraisers differ, however, in their application of the income method. Petitioner's expert Schaeffer concluded that by taking known rents from other local nightclubs[1] and applying them to the building it would have a fair market value of $1,080,000.00. He included all three floors of the building in his calculation and contended that by so doing factored out any income attributable to adult entertainment. Schaeffer, then using comparable sales valued the vacant lot at $165,000.00
Scotti in what he describes as a somewhat "ethereal" approach takes the gross earnings of Fantasies for previous years and after factoring out the portion attributed to adult entertainment compares it with other rents for nightclubs and then arrives at a fair market value, not including the third floor, of $486,762.00. He then uses the cost of replacement method to value the third floor at $50,837.00 resulting in a rounded off appraisal of $540,000.00. His figure includes the vacant lot which he believes should be treated as part of the building parcel since that parcel has no on-site parking. He also appraised the property from both a comparable sale ($525,000.00) and cost replacement ($530,000.00) approach.
There is no question that both experts had difficulty with this appraisal. In trying to fairly value the property, as a nightclub, they made efforts to avoid including income from adult entertainment in its value. After careful analysis, this Court finds Scotti's appraisal more persuasive.
 WHY SCOTT'S APPRAISAL IS PREFERRED
a) Scotti had the advantage of appraising the property (both lots in 1998 at a value of $500,000.00[2]
b) While relying on the income approach, he also used the cost of replacement and comparable sales approaches. He verified his conclusions by showing that they were all within $15,000.00 of each other.
c) Scotti correctly pointed out that Schaeffer failed to factor out the third floor from his analysis even though the Petitioner was barred by the city from using it for any purpose at the time of the condemnation.
d) Scotti in his income approach excluded the value of the adult entertainment portion of income before reaching a value; while Schaeffer, by using rents from properties in clearly more valuable areas, did not.
e) Scotti properly treated the vacant lot as part of the whole parcel because the building lot lacked any on-site parking. Schaeffer, on the other hand, placed values on the lot again based on comparables for lots in much higher valued sections of the city.
Nearly 50 years ago, while growing up in Providence and walking daily to Classical High School, this Court regularly passed the building in question. It was nothing more than a tenement house in what was then one of the city's most run-down neighborhoods. Over the years, similar tenements have been destroyed leaving vacant lots as well as some industrial and intense commercial properties. While both appraisers were correct in treating this property as a commercial nightclub, there is no question that, but for the adult license, it would have been nothing but a neighborhood tap, and not much of one at that. Adult entertainment was the driving force that made this business valuable and it should not have been included in the value of the real estate. As suggested by Respondent, to do so would have given Petitioner a windfall since it moved the adult entertainment enterprise to a new site before condemnation, and is now making more money than at the condemned property.[3]
 FINDINGS OF FACT
Accordingly, the Court makes the following finds of fact:
1. The third floor was not used at the time of the condemnation.
2. The vacant parking lot must be treated as a part of the building parcel.
3. Schaeffer's analysis used rental and sales comparisons from sites that were in a far more valuable section of Providence.
4. Scotti's appraisal was more reliable based in his 1998 evaluation as well as the closeness of values from the three methods of appraisal used.
5. A significant portion of the income was due to the adult entertainment business going on there and not the real estate itself.
6. Finally, the Court finds that Scotti's total valuation of $540,000.00 accurately reflects the fair market value of the two lots on December 7, 1999.
Counsel shall prepare an appropriate order for entry.
[1] Scotti in his testimony challenged the accuracy of the rental figures used by Schaeffer.
[2] The last city assessment conducted in 1988 valued the lot at $17,500.00 and the building at $151,300.00.
[3] While proximity to Route 95 is given as a reson for higher value by Schaeffer; in fact, Route 95 serves as a barrier separating this property from the higher valued downtown area.