260 A.2d 152.

Golden Gate Corporation *vs.*
Providence Redevelopment Agency.

DECEMBER 30, 1969.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Roberts, C. J. This petition was brought pursuant to the provisions of G. L. 1956, §45-32-34, as amended by P. L. 1964, chap. 177, sec. 1, for the assessment of damages sustained by the petitioner as a result of the taking by eminent domain of certain real property of the petitioner by the respondent agency, hereinafter referred to as agency. The petition was heard by a justice of the Superior Court sitting with a jury during the months of November and December, 1966, and a verdict was returned for the petitioner in the amount of $616,000 plus interest. The agency thereafter moved for, and the trial justice ordered, a new trial unless the owner consented to a remittitur in the amount of $203,-618. The owner did not file the remittitur as directed, and both the owner and the agency appealed from the judgment entered by the trial justice.

The property, taken by condemnation on May 15, 1964, was located at the intersection of Fountain and Jackson Streets in Providence. It does not appear to be disputed that the structure located on the land had been used by The James Hanley Company as a brewery both before and after Prohibition. Later it was operated as a brewery for a short time by the petitioner corporation, but brewery opera-

tions ceased in 1957. Thereafter, between 1957 and 1964, items of equipment used in the brewing process were removed from the building, and all utility services were shut off early in 1959. Thereafter there was no maintenance activity of any kind carried on in the building. It also appears to be conceded that when the brewing machinery was removed the exterior walls of the building were breached and that these openings were not closed after the machinery had been removed.

In the course of trial, evidence was adduced by the owner for the purpose of establishing the fair market value of the property taken, including the land and the building. It was agreed, however, that, while comparable sales were available from which the market value of the land could be established, no such comparable sales were available that would reflect the fair market value of the building. In these circumstances the court permitted the owner to establish the fair market value of the building by the process of capitalizing the net income of the property. Stated in elementary terms, the capitalization-of-income method for determining the fair market value of property is based upon a determination of the gross income that the property would produce and the deduction therefrom of the cost of the operation of the building necessary to produce that income to reach a conclusion as to the net income thereof. The net income having been established, a formula for capitalization is applied which would give the fair market value of the building based upon its capacity to produce a net income in that amount.

One Andrew S. Heyman, who established his qualification as an expert in real estate, testified in behalf of the owner as to the factors necessary to permit the application of a formula for capitalization of net income. He testified generally that the highest and best use of the building would be for use as a public warehouse and, after testifying as to

the methods for establishing what revenues a building used as a warehouse would produce, he came to the conclusion that the gross income would equal $113,000 annually.

Mr. Heyman then went on to testify as to his estimates of the deductions to be taken from the gross income to establish the net income. He testified that he estimated the taxes at $19,000 per year and that insurance coverage of the building would cost $1,000 a year. He further estimated that exterior maintenance of the building would cost $2,000 and that a management fee would amount to $3,000. These expenses totaled $25,000, which the witness deducted from the gross income to get a net income from the land and improvements of $88,000. He then deducted the amount of income imputable to the land, which he testified came to approximately $14,000. This, he testified, was in turn deducted from the $88,000 income after expenses to establish the net income at the amount of $74,000.

Mr. Heyman then proceeded to explain the manner in which he applied a formula for a capitalization of the net income so as to determine a fair market value. He testified that after an application of the formula, he determined that the value of the land and building would be $1,103,260 and that, when he deducted the cost of restoration, the value as of May 1964, the time of taking, would have been $750,000 in round figures.

Subsequently, counsel for the agency cross-examined the witness Heyman and in the course thereof inquired into the method by which Heyman had determined the factors on which he based his estimate of the amount of taxes that would be paid annually as an operating expense of the restored building. He similarly cross-examined Mr. Heyman as to the bases for his estimates of the amount of insurance that would constitute a part of the annual operating cost. These items, taxes of $19,000 and insurance of $1,000, constituted a substantial portion of Mr. Hey-

man's estimate of the operating expenses which, when deducted from the gross income of the building, established the net income for capitalization.

The witness was first cross-examined as to the factors upon which he estimated his conclusion that the tax to be levied against the property annually would amount to $19,000. In response to these inquiries, he testified that he had estimated the cost of renovation of the building at $280,000 and that in his opinion this would be a basis for the assessment of taxes against the building by the assessors at the conceded Providence tax rate of $39 a thousand. This would amount to $11,020. He then proceeded to testify that he added to this figure an amount of $8,000, which, he contended, was the amount at which the building had been taxed in 1964 prior to the taking and prior to any of the proposed renovations being made. He then testified that he had added these figures together and rounded them out at $19,000, which constituted his estimate of the annual tax to constitute one of the expenses of operation.

At this point counsel for the agency asked the witness to "* * * compute the assessed value that would result in a tax of $7,980 * * *." Counsel for the owner objected and stated as his ground for objection that the question sought to require the witness "* * * to compute the assessed valuation of the property in 1964." This objection was sustained by the trial justice. Counsel for the agency then requested that his exception be noted and pursued that particular issue no further.

It is our opinion that the court erred in sustaining this objection. The question was intended clearly to test the validity of Mr. Heyman's estimate of the fair market value of the building at the time of the taking. By this line of inquiry, the agency sought to discredit his estimate as to the amount of taxes that would be levied against the renovated building and to thereby discredit Mr. Heyman's

estimate of the amount of net income to accrue from the renovated building, this being the amount to which he applied his capitalization formula. The agency was attempting to direct the attention of the jury to the inconsistency between Mr. Heyman's testimony as to the fair market value of the building when renovated for use as a public warehouse and the assessed valuation of a building that would have been taxed in the amount to which he testified in 1964, when purporting to establish the net income. In other words, it was the purpose of the agency in seeking to cross-examine Mr. Heyman to discredit his estimate of one of the costs that was an important factor in the establishment of the net income, which, of course, in turn would discredit his ultimate estimate as to the fair market value of the building at the time of the taking.

It is settled that the scope of permissible cross-examination is a matter resting largely within the discretion of the trial court. *State* v. *Frazier*, 101 R. I. 156, 221 A.2d 468. However, this discretion will be sustained only when it has been properly "* * * exercised in the light of reason applied to all the facts and with a view to the rights of all the parties to the action." *Colitz* v. *Gilbert*, 53 R. I. 319, 321, 166 A. 685, 686. In other words, the discretion of the court may not be exercised arbitrarily or willfully, but only with a just regard to what is right and equitable under the circumstances and the law.

We turn then to the question of whether the trial justice abused his discretion in limiting cross-examination on the part of the agency in the circumstances of this case. This court has recognized that in cases involving the condemnation of property a most comprehensive cross-examination should be allowed. We have noted particularly that one of the prime purposes for taking that view is to insure that the parties to such an action may bring to the attention of the jury all of the factors upon which an owner or an

expert witness bases his estimates of fair market value. It is only by so doing that the jury may have an opportunity to withhold credence from such prior testimony of an owner or expert witness.

We made this position clear in *Atlantic Refining Co.* v. *Director of Public Works,* 102 R. I. 696, 713, 233 A.2d 423, 432, when we said: "There is, moreover, an additional, and perhaps a more compelling, reason why it was an abuse of discretion to limit the state's right to cross-examine Raleigh on his earlier statement of value. While the right to cross-examine an adversary witness exists as a means of developing the facts in a case, it has another and equally important underlying purpose and that is the opportunity it affords to test a witness as to the possibility of his bias or prejudice, and his ability to recollect. (cite omitted) It is to satisfy these fundamental concepts that we have always permitted cross-examination which is designed to discredit the witness by impeaching his direct testimony through proof that he at some earlier time expressed an opinion at variance with that testified to from the witness stand. (cite omitted) Impeachment of the credibility of a witness, we have said, is a basic purpose of cross-examination." This court reaffirmed its position in *Atlantic Refining Co., supra,* in the case of *Cooper* v. *Housing Authority,* 105 R. I. 126, 249 A.2d 904.

We are persuaded then that the trial justice, in limiting cross-examination on the part of the agency, abused his discretion. The agency had a clear right to raise questions as to the validity of Mr. Heyman's testimony concerning the net income of the proposed building and the factors upon which he estimated that income. It is obvious that, if the jury elected to disbelieve Mr. Heyman's testimony as to the amount of taxes that would be assessed annually when the building was converted to warehouse use, they would in turn discredit his estimate of the net income to

which he had applied the capitalization formula. It is, therefore, our opinion that the sustaining of the objection to this line of inquiry constituted reversible error.

As we have already noted, Mr. Heyman testified in similar fashion to the cost of insurance coverage for the building to be incurred annually after conversion, setting the amount at $1,000 per year. The agency had also, as we have noted, inquired as to the amount of coverage that a $1,000 premium would purchase per year. Objection to this question was sustained by the court. Again, for the same reasons that we have set forth above, we consider this ruling to constitute reversible error.

We conclude then that prejudicial and reversible error inhered in the evidentiary rulings of the trial justice to which we refer above and that a new trial conducted in accordance with this opinion must be ordered. Because we have reached this conclusion, we deem it unnecessary to further consider the appeal of the petitioner from the decision of the trial justice on the respondent's motion for a new trial.

The appeal of the respondent is affirmed; the judgment appealed from is reversed; the appeal of the petitioner from the decision of the trial justice ordering a new trial unless a remittitur were filed is denied and dismissed; and the cause is remanded to the Superior Court for a new trial.

Motion for reargument denied.

*Arcaro, Belilove & Kolodney, Abraham Belilove,* for petitioner.

*Timothy J. McCarthy, Paul F. Casey,* for respondent.