370 A.2d 226.

SAMUEL CORRADO *et ux. vs.* PROVIDENCE REDEVELOPMENT AGENCY.

MARCH 7, 1977.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C. J. This petition was brought on July 21, 1970, pursuant to the provisions of G. L. 1956 (1970 Reenactment) §45-32-43, to assess damages for the condemnation of the plaintiff's property located on South Main Street in the city of Providence. A trial justice, sitting without a jury, awarded Mr. Corrado[1] $35,000 in damages plus interest. Thereafter Mr. Corrado filed a motion for a new trial based upon alleged newly discovered evidence. That motion was denied and both parties have appealed: The Providence Redevelopment Agency (the agency) ap-

---

[1] The trial justice found that Mrs. Corrado had only a dower interest in the property, and, therefore, judgment was entered in favor of Mr. Corrado alone.

peals from the judgment and contends that the trial justice was incorrect in considering the property's fair market value computed by methods other than comparable sales; Mr. Corrado appeals from the denial of his motion for a new trial.

The subject-property is located at 312 South Main Street in an area of the city of Providence designated by the Providence City Council as an historical district. Testimony contained in the record indicates that it was built in the late 1700's; a time when South Main Street was principally a residential area. Physically, the structure, as described by Mr. Corrado in his testimony, is of a brick construction, four stories in height, and containing approximately 6,612 square feet of rentable floor space. The basement floor of the building is located on South Main Street while two upper floors are built into the side of a hill so that at the rear of the building, along Well Street, the third floor is slightly above the ground level. The fourth floor is of a mansard construction and, apparently, was added to the original structure at a later date.

While the building's exterior is still structurally sound, the interior in its present condition remains unattractive for either commercial or residential use: there is electricity on the first two floors only; no facility for central heating exists; plumbing of any sort is entirely absent from the third and fourth floors; and, because of leaks in the exterior walls, a number of the rooms are susceptible to damage from the elements. Thus, it appears that the building is generally in a deteriorated condition. Yet at no time during Mr. Corrado's occupancy were attempts made to restore the building to its former condition, nor were attempts made to convert it into a more commercially attractive structure.

Since 1967, when Mr. Corrado purchased the property from his mother, he has used it as a location for the family's

business, selling antiques and used items. Primarily, business was being conducted from the first floor while portions of the upper floors were being used for storage and office space. Apart from the profits provided by the antique business the building generated no further income, nor was it being used for any other purpose at or about the date of condemnation.

At the trial, Mr. Corrado presented four witnesses on his behalf. The first witness was Mrs. Antoinette A. Downing, chairman and member of a number of historical preservation agencies and author of two books on historic Rhode Island homes. She testified to the significance this building possessed as an architectural example of the period in which it was built, its potential for restoration, and her opinion as to the approximate cost of such restoration—$100,000. Mr. Corrado's next witness, an expert on building restoration in the city of Providence, detailed the cost of restoring the subject-property, which in his opinion would amount to approximately $87,000. The final witnesses, Mr. Brassard and Mr. Carter, each having had considerable experience in working with property of this kind, testified that the building could be restored and that its best use would be to convert the property into premium commercial or office space. They were also able to give their opinion as to the fair market value of the subject-property: $68,000 and $45,000, respectively.

In computing his appraisal Mr. Brassard used two methods: comparable sales and capitalization. The comparable properties are all located within the general vicinity of the subject-property and are presently being used as office space. Two of the buildings have frame structures while the third, located at 220 South Main Street, is a brick building containing approximately one-half the rental space as the subject-property. It was this building which Mr. Brassard principally relied upon in computing his appraisal under

the comparable sales method. In using the capitalization method,[2] his appraisal was based upon the net rental income the subject-property could generate if it were fully restored for premium commercial space and then deducting from this the costs of restoring and maintaining the building. After capitalizing this figure at a fixed rate, he arrived at an appraisal figure which he then combined with his earlier appraisal, using comparables, to achieve a final estimate of the building's fair market value. Similarly, Mr. Corrado's other witness, Mr. Carter, determined the value of the subject-property by capitalizing the projected net rental income from the subject-property if the structure were fully converted into premium office space.

The agency presented two witnesses on its behalf, each with considerable experience in the field of real estate appraisal. Using only the comparable sales method, Mr. O'Reilly appraised the subject-property at $10,500; the capitalization of income method was not utilized since he felt that it contained "too much divergence for margin of error." As did Mr. O'Reilly, the agency's other witness, Mr. Riker, used the comparable sales method in determining the subject-property's fair market value. In his opinion, its value as of the date of condemnation was $9,000.

In his decision, the trial justice attributed the disparity between the agency's appraisal figures and Mr. Corrado's appraisal figures to a difference of opinion concerning the

---

[2] In *Golden Gate Corp.* v. *Providence Redev. Agency*, 106 R. I. 371, 373, 260 A.2d 152, 154 (1969) this method of appraisal was described:

"* * * the capitalization-of-income method for determining the fair market value of property is based upon a determination of the gross income that the property would produce and the deduction therefrom of the cost of the operation of the building necessary to produce that income to reach a conclusion as to the net income thereof. The net income having been established, a formula for capitalization is applied which would give the fair market value of the building based upon its capacity to produce a net income in that amount."

highest and best use of the property. Mr. Corrado's witnesses determined that the subject-property could be profitably utilized by expending a considerable amount of money in converting it entirely into premium office space. On the other hand, the agency's witnesses concluded that the only economically feasible use of the subject-property was for low commercial sales at the street level with the upper floors being used for storage space; in effect, for the type of use to which it was being put by Mr. Corrado. Although it is not entirely clear from his decision, the trial justice concluded that a hypothetical purchaser of this property would be interested in converting it to commercial office space. For other reasons, however, the trial justice indicated that he could give no weight to the alleged comparable sales proffered by the agency, either because they were located in an area of Providence quite unlike South Main Street, or because the date of the sale was too remote.

He did conclude, though, that the property located at 220 South Main Street was comparable to the subject-property. That building was sold in 1963 for $30,000 at a time when it was in a completely unrestored condition. While it contained only approximately one-half the rentable floor space of the subject-property, the trial justice felt that it adequately reflected what the subject-property was worth on the date of condemnation. Since the 220 South Main Street property was subsequently converted into commercial office space and resold for $125,000 in 1971, the trial justice concluded that it was feasible for the subject-property to undergo a similar restoration.

The agency objected to the testimony of Mr. Corrado's witnesses concerning the cost of refurbishing the subject-property and the income it would generate if restored. While not unmindful of our decision in *Lataille* v. *Housing Authority*, 109 R. I. 75, 280 A.2d 98 (1971), proscribing the

use of alternative methods of determining fair market value when evidence of comparable sales has been introduced, the trial justice overruled these objections. His opinion undoubtedly gives us an insight into his reason for doing so:

"I will be the first to admit that the capitalization of income approach to [fair market] value is less reliable than the comparable sales approach. It is more likely to contain errors of computation and erroneous assumptions. However * * * [in] all cases where the property to be appraised is income producing, an income approach is relevant and the fact finder should have the benefit of that evidence in order to make a determination [of fair market value] * * * ."

It is the ruling of the trial justice, admitting evidence of the capitalization of income method to determine fair market value, which is the basis of the agency's appeal.

I

In a proceeding to award just compensation for property taken pursuant to an exercise of the power of eminent domain the ultimate fact which must be determined is the fair market value of the property at the date of condemnation. *L'Etoile* v. *Director of Pub. Works,* 89 R. I. 394, 153 A.2d 173 (1959); *Hall* v. *City of Providence,* 45 R. I. 167, 121 A. 66 (1923). Fair market value, as this court has interpreted it, is best evidenced by "* * * prices paid at or about the time of the taking at voluntary sales in the open market by willing buyers to willing sellers for parcels substantially similar and comparable to that taken," *Manning* v. *Redevelopment Agency,* 103 R. I. 371, 374, 238 A.2d 378, 380 (1968), considering all uses to which the land was adapted and might in reason be applied. *Assembly of God Church* v. *Vallone,* 89 R.I. 1, 9, 150 A.2d 11, 15 (1959) *citing* 4 Nichols, *Eminent Domain* §12.2 [1] at 32 (3d ed. 1952). Where there is available evidence of comparable sales, it will operate to exclude the use of other methods of determining fair market value. *Lataille* v. *Housing Authority,*

*supra.* The trial justice's determination on the question of availability of comparable sales will be reversed only if "palpably or grossly wrong." *Hervey* v. *City of Providence,* 47 R. I. 378, 379-80, 133 A. 618, 619 (1926). *Accord, Jones* v. *Providence Redev. Agency,* 92 R. I. 285, 290, 168 A.2d 156, 159 (1961). Significant factors, among others affecting comparability are: location and character of the property, proximity in time, and use to which the property is put. 5 Nichols, *Eminent Domain* §21.31 et seq. (Rev. 3d ed. 1975).

In the instant case the trial justice found that the property located at 220 South Main Street was the most comparable sale. Unlike the other alleged comparables he noted that it was proximately located to the subject-property. Furthermore, he recognized that, although it was smaller in size, it was the same sort of colonial brick structure as the subject-property, and had been sold in 1963 for $30,000. Based upon these facts the trial justice concluded that it was "a pretty good indicator of what the subject-property was worth in 1970."

Generally, in consonance with old holding in *Lataille,* the availability of such a comparable sale would have operated to exclude evidence of fair market value based upon other methods of computation. Nevertheless, as we have already indicated, the trial justice admitted evidence as to the value based upon a capitalization of income method. His belief was that an income approach is always relevant wherever the property to be appraised is income producing.

We do not subscribe to this view. As we reiterated in *Lataille,* generally, where there is available evidence of comparable sales it will operate to exclude the use of other methods of computing fair market value. The fact that the property to be appraised is income producing does not diminish the probative force evidence of comparable sales has on the issue of fair market value.

Nor does the fact that the trial justice disagreed with the merits of our decision in *Lataille*[3] authorize him to make evidentiary ruling contradicting clearly controlling authority established by this court. The duty of a trial justice is to determine and apply the correct law in a given case; a trial justice is not free to ignore the law simply because he feels it ought to be different. The final arbiter of the efficacy, interpretation, and applicability of the laws of this state, within the limits prescribed by our state and federal constitutions, is this court. *See D'Arezzo* v. *D'Arezzo,* 107 R. I. 422, 426, 267 A.2d 683, 685 (1970).

However, the invalidity of the ground upon which the capitalization of income testimony was admitted does not render it incompetent if there was a valid ground upon which the testimony could be based. *Bruce* v. *State Dept. of Pub. Works,* 93 R. I. 466, 470, 176 A.2d 846, 848 (1962). We believe such a ground exists.

It has long been recognized in this jurisdiction that "in some unusual case involving peculiar circumstances" a trial justice, in an exercise of sound judicial discretion, may admit testimony of the fair market value of property based upon other methods of computation even though evidence of comparable sales is available or has already been admitted. *Lataille* v. *Housing Authority, supra* at 79-80, 280 A.2d at 100; see *e.g., Hall* v. *City of Providence, supra* at 168-69, 121 A. at 67. In *Hall* this court condoned the admission into evidence of the cost of improvements placed

---

[3]The trial justice in his decision clearly stated his position:

"I disagreed with that decision [Lataille] from the moment it came down * * *. I don't mean to be disrespectful to the Supreme Court. Generally when they make a rule of substantive law with which I may disagree, I follow it and if someone wants a reversal they can take the case to the Rhode Island Supreme Court. However, the rule in *Lataille* is a rule of evidence and there is really no way that a ru'e of evidence can be tested unless the trial judge makes a contrary decision and the case is brought to the attention of the Supreme Court.

upon the petitioner's property since, because of its unique character, reference to previous sales of similar properties would not have adequately reflected its fair market value. And in *State* v. *Burnett*, 24 N. J. 280, 131 A.2d 765 (1957), the Supreme Court of New Jersey determined that the trial justice had not abused his discretion in admitting evidence of reproduction cost where the defendant had shown that the uniqueness of the property precluded use of allegedly comparable sales. The court felt that in the "absence of comparable sales to indicate comparable values [citation omitted] such evidence is admissible." *Id.* at 289, 131 A.2d at 770.

The Supreme Court of New Hampshire recently had occasion to consider circumstances almost identical to those in the instant case. In *Fusegni* v. *Portsmouth Housing Authority*, 114 N. H. 207, 317 A.2d 580 (1974), the primary issue was whether the trial court erred in admitting testimony concerning the reproduction cost of the plaintiffs' home as evidence of its fair market value. The building was a three-story colonial structure, known as the Sherburne House, and was originally built in 1725 as a single-family residence. Although in 1956 it was converted into a four-family dwelling, many of the colonial features of the house had been preserved in excellent condition, including scroll-work above the entryway and windows, wood panelling, wide floor boards and eight fireplaces. Thus, it was evident that the plaintiffs' property was a unique and well-preserved colonial structure with considerable intrinsic value. Under these circumstances the court felt that the defendant's rights were not prejudiced by the introduction of the reproduction cost as evidence of fair market value.

In so concluding, the New Hampshire court recognized that reproduction cost evidence almost invariably tends to inflate valuation and, accordingly, substantial safeguards must be placed upon its admission. *Id.* at 210, 317 A.2d at

582 *citing* 5 Nichols, *Eminent Domain* §20.2[1] at 20-17 to 20-21 (3d ed. 1969). In *Fusegni,* sufficient safeguards were present. Significantly, the reproduction cost was only one of three methods utilized to determine fair market value; additionally, evidence of fair market value was admitted based upon the capitalization of income and comparable sales approach. Furthermore, experts for both parties presented detailed evidence in support of their opinions and were subjected to cross-examination.

Fundamental to the rationale supporting these decisions is the understanding that just compensation, generally best evidenced by market value, is a court's ultimate concern. Where the method usually applied in making this determination is no longer probative, however, evidence of other more relevant methods may be admitted in order to avoid injustices to the owner. Accordingly, if the property contains special or unique characteristics which affect its value as in the *Hall, Burnett,* and *Fusegni* cases, the owner is entitled to have them considered and, thus, methods of determining fair market value other than through the exclusive use of comparable sales have been utilized.

In reviewing the record, we find that the subject-property in the *instant* case contained a number of special and unique characteristics. The structure was built approximately 200 years ago and, as testified to by Mrs. Downing, was known at one time as the Axel DeFerson House, named after a Swedish soldier in the French Revolution. Its interior, while in an unrestored condition, contained features of apparent historical interest including wainscotting, elaborate cornices, large fireplaces, and an unusual staircase. Although the building was not listed as an historical structure in the Providence Historic District Ordinance, there was testimony to the effect that its omission was a mistake and that the Providence Historical and District Commission has always considered it an historical structure. In-

deed, the trial justice recognized that the "property in question is rather unique."

Accordingly, we believe the enumerated characteristics of Mr. Corrado's property reflected its unique nature as a structure of some historic significance. Under these circumstances, we hold that it was not error for the trial justice to admit and consider evidence of appraised value based upon the capitalization of income.[4]

In so concluding, we recognize, as did the trial justice, that the capitalization of income method used in determining fair market value is less reliable than the comparable sales approach: significantly, it is more likely to contain erroneous assumptions, and it is often incapable of direct proof. In his opinion the trial justice made it clear that while he considered the capitalization testimony he did not rely substantially upon it. He recognized the considerable divergence of opinion, due at least in part to the numerous and varied assumptions which each witness might apply when using this approach, concerning the income this property would generate after it had been refurbished. Accordingly, the trial justice placed much greater reliance upon the sale of the 220 South Main Street property and it appears that he used the capitalization testimony only as a check on the figure he adduced using the comparable sales approach. In light of this, we do not believe that defend-

---

[4]We note that the subject-property, while unique, has a definite and ascertainable market value and is not a so-called "specialty property." See *e.g.*, *Trustees of Grace & Hope Mission of Baltimore City, Inc.* v. *Providence Redev. Agency,* 100 R. I. 537, 217 A.2d 476 (1966); *Assembly of God Church* v. *Vallone,* 89 R. I. 1, 150 A.2d 11 (1959). *See generally* 4 Nichols, *Eminent Domain* §12.32[1] at 12-348 (Rev. 3d ed. 1976.)

ant's rights were prejudiced by the introduction of capitalization of income testimony.[5]

## II

We now turn to Mr. Corrado's motion for a new trial. He asserts that it was reversible error to deny that motion because of alleged newly discovered evidence which would show that, contrary to the testimony of Mrs. Downing, 312 South Main Street did appear in a corrected list of historic structures used by the Providence Historic Zone Commission. We do not agree.

Pursuant to Super. R. Civ. P. 59(a)(2) the court in a nonjury civil action may review its own decision and grant a new trial only if it finds either a manifest error of law in the judgment previously entered or that there is newly discovered evidence not available at the original trial that is of sufficient importance to warrant a new trial. *Colvin* v. *Goldenberg*, 108 R.I. 198, 208, 273 A.2d 663, 669 (1971). Even assuming, without deciding that the evidence was newly discovered and not available at trial we fail to see how it is of sufficient importance to warrant a new trial; it merely further substantiates what the trial justice already recognized and took into account: the fact that the subject-property was an historical structure. Such addi-

---

[5]Our earlier decision, *Thomas B. Gray, Inc.* v. *Providence Redev. Agency*, 114 R. I. 370, 333 A.2d 143 (1975), is inapposite to our holding today. In *Gray*, petitioner made an offer of proof in order to show that because of its historic character, the property was so unusual that its value should be determined by the reproduction cost method. The trial justice rejected that offer of proof in its entirety. He found that the sales presented by the respondent were comparable and, therefore, the petitioner was prevented from introducing reproduction cost evidence. On appeal we held that the petitioner's offer of proof did not clearly demonstrate that the taken property was so exceptional as to require the conclusion that the trial justice was "palpably and grossly wrong" in his exclusionary ruling. The instant case involves no such specific ruling by the trial justice rejecting proffered evidence that the subject-property was unique.

tional historical evidence would not have altered the trial justice's decision.

The appeals of the plaintiff and the defendant agency are denied and dismissed.

Mr. Justice Paolino did not participate.

*Samuel Corrado,* pro se, for plaintiffs.

*Timothy J. McCarthy,* for defendant.