DECISION
This matter comes before this Court for decision after a bench trial on June 6, 1996 to assess damages. This Court, at a previous trial held that the defendant, Ferland Corporation (Ferland) was liable to the plaintiff, Burke-Tarr Company (Burke-Tarr) for the fair market value for the use of the right-of-way in dispute, as extended and improved pursuant to an expired lease between the parties.
The trial on June 6, 1996 was to determine those damages. The issues presented here are: (1) what property valuation method should be utilized to determine the fair market value of the right-of-way as extended and improved pursuant to the now expired lease to assess damages, (2) what is the amount of the damages actually sustained by the plaintiff, and (3) whether Burke-Tarr, after giving notice in accordance with § 34-7-6 of the Rhode Island General Laws (R.I.G.L.) of 1956 as amended, to prevent the acquisition by proscription by Ferland, is entitled to recover the full costs of the action, including attorney's fees under R.I.G.L. § 34-7-7.
For the reasons set forth herein, the comparable sales valuation method is appropriate to assess the damages, and judgment will be entered for the plaintiff in the amount of sixty-six thousand and seven hundred and six dollars and twenty-four cents ($66,706.24) plus interest and costs, and Burke-Tarr is not entitled to attorney's fees or costs pursuant to R.I.G.L. § 34-7-7.
FACTS AND TRAVEL
On January 25, 1911, a deed was recorded in the land evidence records of the then Town of Warwick, acknowledging a sale of the property now owned by Ferland from a man named John Cassidy to the Moduc Club (Moduc). This deed declared a right-of-way of seventeen and one-half (17.5) feet in width from what is now Warwick Avenue over the subject property now owned by Burke-Tarr to access a cottage on the property adjacent to the subject property.
On April 11, 1958, Burke-Tarr purchased property from Mary and Robert Walsh. Ms. Bessie Dickerson, the current sole owner of Burke-Tarr, was the co-treasurer of Burke-Tarr at the time of the purchase in 1958. On November 3, 1967, the receiver for the then defunct Moduc, sold five and three-fourths (5.75) acres of the property to Ferland.
On January 31, 1970, a fifteen (15) year lease was entered into between the parties to this action. The lease called for Ferland to pay Burke-Tarr one thousand dollars ($1,000.00) per year for the first five (5) years, one thousand and two hundred dollars ($1,200.00) per year for the second five (5) years, and one thousand and four hundred dollars ($1,400.00) per year for the final five (5) years. Pursuant to this original lease, an additional seven and one-half (7.5) feet was added to the original seventeen and one-half (17.5) foot right-of-way, bringing the total to a right-of-way that was twenty-five (25) feet wide and four hundred and thirty-seven (437) feet long. Also incorporated into this original lease was a provision that called for the right-of-way to be paved. This lease greatly expanded and increased the usage of the right-of-way, far beyond that which was originally contemplated in 1911 at the time of the right-of-way's creation. The State of Rhode Island at present time has title to two hundred and nineteen (219) feet of the right-of-way from Warwick Avenue to Ferland's property.
Ferland's property currently consists of a one hundred and ninety-one (191) unit apartment complex. On April 4, 1970, Ferland had a six (6) inch waterline installed on and adjacent to the now paved twenty-five (25) foot wide right-of-way to provide a water source to Ferland's apartment complex. The lease between Ferland and Burke-Tarr made no provision for the installation or maintenance of waterlines either on the right-of-way or adjacent to it on Burke-Tarr's property. However, Burke-Tarr was aware of and permitted the installation of the waterline without discussion because of the existence of the lease executed in January, 1970.
From 1970 to 1985, when the original lease was in full force and effect, Ferland utilized the twenty-five (25) foot right-of-way and maintained its utility lines on and adjacent to such right-of-way. However, from January 1, 1986 through the present time there has been no lease between Ferland and Burke-Tarr. The last payment by Ferland to Burke-Tarr under the original lease was made on or about December 17, 1986.
Burke-Tarr brought an action for trespass and ejectment against Ferland. On December 17, 1986, a judgment was entered in Kent County District Court for Burke-Tarr and against Ferland for possession of, and money damages for the leased portion of the said right-of-way. Subsequent to that judgment, Ferland took an appeal to the Superior Court. A dismissal stipulation was signed by the parties on February 11, 1987.
On June 12, 1987, Burke-Tarr filed a notice of intent to dispute the creation or existence of any rights arising from the use of said right-of-way with the City of Warwick clerk's office and recorded in book nine hundred and eighty-four (984) at page three hundred and thirty-four (334).
After a trial on October 13, 1993, the Court found Ferland liable in damages for use of the said right-of-way. A trial for damages was held before this Court on June 6, 1996, by the trial justice without intervention of a jury.
DISCUSSION I. Property valuation method to determine the fair market value of the right-of-way as extended and improved pursuant to the now expired lease and utilized to assess damages.
In its memorandum before this Court, Burke-Tarr argued that the enhancement valuation method, testified to by Bernard P. Rioux, the defendant's real estate expert, should be used to determine the fair market value of the right-of-way to assess damages. The enhancement valuation method in this case Burke-Tarr argues, calls for this Court to take the difference between the fair market value of Ferland's property with the right-of-way and the right to the waterline, and subtract from that the fair market value of Ferland's property without the benefit of the right-of-way and the right to the waterline. Burke-Tarr argued that the subject property was so unique that there could be no comparable sales by which to assess a fair market value to the subject property in dispute. Burke-Tarr further argued that there was a substantial difference between the highest and best use of Ferland's property with or without the right-of-way and the pipeline. Burke-Tarr reasoned that it would not have been possible for Ferland to construct its apartment units without the right-of-way or the pipeline's access to a water supply. Finally, Burke-Tarr argued the right-of-way's use for vehicular and pedestrian traffic has a value equal to a fair rent. The fair rent Burke-Tarr concluded was the enhancement of the market value of Ferland's property afforded by the right-of-way and the water pipeline. Using the enhancement property valuation approach, Burke-Tarr argued that damages in this case totaled five hundred and twenty-five thousand and nine hundred and seventy-five dollars ($525,975.00).
In contrast to Burke-Tarr, Ferland argued that the comparable sales method of property valuation should be used by this Court to assess damages in this case. The comparable sales property valuation method has been defined as:
 The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently and knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:
 1. Buyer and seller are typically motivated.
 2. Both parties are well informed or well advised and each acting in what they consider to be their own best interest.
 3. A reasonable time is allowed for exposure in the open market.
 4. Payment is made in cash in U.S. dollars or in terms of financial arrangements comparable thereto.
 5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.
 "Uniform Standards of Professional Appraisal Practice as promulgated by the Appraisal Standards Board of The Appraisal Foundation." (See defendant's Exhibit C at page 5).
Our Supreme Court on many occasions has indicated that the preferred method of ascertaining the fair market value of land is the comparable sales method where such sales are available.Capital Properties v. State, 636 A.2d 319, 321 (R.I. 1994);Warwick Musical Theatres Inc. v. State, 525 A.2d 905, 910 (R.I. 1987). The fair market value is best evidenced by ". . . prices paid at or about the time of the taking at a voluntary sale in the open market by willing buyers to willing sellers for parcels substantially similar and comparable to that taken." Corrado v.Providence Redevelopment Agency, 117 R.I. 647, 653 (1977);Manning v. Redevelopment Agency, 103 R.I. 371, 374 (1968). Accordingly, evidence of comparable sales, when available, will exclude the use of other methods of deducing the fair market value. Capital Properties, 636 A.2d at 321. However, departure from this general rule is allowed in certain situations, such as when the subject property is unique or special. Id. at 322. A departure from this general rule is required when the admission of other more relevant methods of ascertaining a property's fair market value will avoid injustices. JWA Realty v. City ofCranston, 121 R.I. 374, 381 (R.I. 1979). A trial justice's determination on the question of availability of comparable sales will only be reversed if the justice is palpably or grossly wrong. Corrado, 117 R.I. at 654; Hervey v. City of Providence,47 R.I. 378, 379-80 (1926). Thus, the critical inquiry is whether, because data from comparable sales were available, the trial justice correctly concluded that the land has such a special purpose that valuation other than by the comparable sales method would be justified. Capital Properties, 636 A.2d at 322. Property is considered to have a special purpose where it is useful to the owner but has no definite and ascertainable market value because such property is not regularly bought and sold on the open market. Id. "Unless the . . . land has a special function . . . its valuation other than by the comparable sales method is not warranted." Id. See O'Donnell v. State, 117 R.I. 660, 663-66 (1977). Examples of real property that the Rhode Island Supreme Court has found to be used for a special purpose include a two hundred (200) year old historic home, a structure used as a musical theater, a three-story structure used as a religious and benevolent mission, a building used as a parsonage, and a highly improved, seventy-one (71) acre farm. Capital Properties, 636 A.2d at 322; Warwick Musical Theatres Inc., 525 A.2d at 910;Trustees of Grace and Hope Mission v. Providence RedevelopmentAgency, 100 R.I. 537, 538, 543 (1966); Assembly of God Church v.Vallone, 89 R.I. 1, 11 (1959); Hall v. City of Providence,45 R.I. 167, 168-69 (1923). Here, this Court finds that the property in question is not so unique and special as to warrant a departure from the comparable sales method. The subject property is simply used as a means of ingress and egress for pedestrians, automobiles and clean water. Therefore, this Court finds as a matter of fact and as a conclusion of law, that the value of the property here in dispute, and thus the damages to be assessed, must be determined by using the comparable sales method. This Court also finds as a matter of law that the enhancement method of valuation advocated by the plaintiff is not appropriate to assess damages in this case and is rejected by this Court.
II. Assessment of damages.
To determine Burke-Tarr's damages, this Court must consider:
 1. The fair rental value of the seven and one-half (7.5) foot by two hundred and eighteen (218) foot strip of real estate;
 2. The fair rental value of the realty for the waterline; and
 3. The adverse effect, if any, upon the remainder of Burke-Tarr's fee estate due to the installation of the waterline which has resulted in more noise and traffic congestion.
 A. Fair rental value of the subject property (7.5 Feet by 218 Feet).
The defendant presented William E. Coyle, a real estate appraiser with over 50 years experience in the Rhode Island real estate market. Mr. Coyle testified to his opinion of the fair market value of the rental of the subject property of the 7.5 feet by 218 feet which was used as a right-of-way for pedestrian and vehicular traffic as well as its use as a conduit for a subterranean pipeline for water to the defendant's apartment complex located to the rear of the plaintiff's property. Mr. Coyle testified that he calculated his estimate of damages pursuant to the comparable sales method of valuation of the subject property taking into consideration any adverse impact occurring to the remainder of the real estate.
Mr. Coyle testified that in forming his opinion he considered three parcels of real estate located within the City of Warwick which he determined to be comparable to the subject property. These parcels are the Inskip property on Route 2, the Showcase Cinema property on Route 2 and the New England Tech property on Post Road near the airport.
This Court finds as a matter of fact that Mr. Coyle's assessment and valuation of these parcels is relevant, probative, material and appropriate in considering them as sales comparable to the subject property in 1986.
Mr. Coyle also considered the lease agreement for the subject property which was in effect for fifteen (15) years and which expired on December 31, 1985 and calculated the damages on the basis of that lease, the value of the subject property as determined by his analysis via comparable sales and a determination of the value of the resultant harm to the subject property occasioned by the permanent installation of the water pipes. Mr. Coyle also factored into his assessment of damages a percentage increase per year of ten percent (10%) for the fair rental value of the subject property. (See mathematical analysis, infra).
This Court finds Mr. Coyle's testimony to be credible, knowledgeable and reliable in its assessment of the rental to the plaintiff and adopts and incorporates his reasoning in this decision as a matter of fact and law — and incorporates Mr. Coyle's testimony in this decision as analyzed below.
Ferland, based upon the comparable sales method, determined that Burke-Tarr's fee estate was worth five dollars and fifty cents ($5.50) per square foot as of January of 1986. This figure was then multiplied by the total square area of the seven and one-half (7.5) foot by two hundred and eighteen (218) foot strip of real estate. Once this figure was derived, it was multiplied by ten percent (10%), which represented the adjusted interest annually. This equation is as follows:
7.5 x 218 = 1,635 sq. ft. x $5.50 x 10% = $899.25
This $899.25 was then added by another 10% for each year between 1986 and 1995, and then added by another five percent (5%) as of June 1996. This equation is as follows:
 1986 $ 899.25 + 10% = $ 989.17 1987 $ 989.17 + 10% = $ 1,088.08 1988 $1,088.08 + 10% = $ 1,196.89 1989 $1,196.89 + 10% = $ 1,316.58 1990 $1,316.58 + 10% = $ 1,448.24 1991 $1,448.24 + 10% = $ 1,593.06 1992 $1,593.06 + 10% = $ 1,752.37 1993 $1,752.37 + 10% = $ 1,927.61 1994 $1,927.61 + 10% = $ 2,120.37 1995 $2,120.37 + 10% = $ 2,332.41 TOTAL = $15,764.76
 To June 1996 + 5% = $16,552.99
 B. Fair rental value of the realty for the installation and use of the waterline.
To arrive at the fair rental value of the realty for the installation and use of the waterline, Ferland multiplied the five dollars and fifty cents ($5.50) per square foot value of Burke-Tarr's fee estate as of January 1986 by thirty percent (30%), which represented Burke-Tarr's subservient fee value. This figure was multiplied by ten percent (10%), which represented the adjusted interest annually. Ferland then took this figure and multiplied it by three thousand eight hundred and fifteen (3,815) square feet, which represented the square area of the remaining right-of-way. This equation is shown as follows:
$5.50 x 30% x 10% x 3,815 sq. ft. = $629.47
This $629.47 was then added by another ten percent (10%) for each year between 1986 and 1995, and then added by five percent (5%) as of June of 1996. This equation is as follows:
 1986 $ 629.47 + 10% = $ 692.41 1987 $ 692.41 + 10% = $ 761.66 1988 $ 761.66 + 10% = $ 837.82 1989 $ 837.82 + 10% = $ 921.60 1990 $ 921.60 + 10% = $ 1,013.73 1991 $ 1,013.73 + 10% = $ 1,115.13 1992 $ 1,115.13 + 10% = $ 1,226.65 1993 $ 1,226.65 + 10% = $ 1,349.31 1994 $ 1,349.91 + 10% = $ 1,484.24 1995 $ 1,484.24 + 10% = $ 2,202.97 TOTAL = $ 11,035.23
 To June 1996 + 5% = $ 11,586.75
 C. Damages to the remainder of the defendant's property.
Ferland took three hundred and sixty-seven thousand and three hundred dollars ($367,300.00), the State of Rhode Island's valuation of Burke-Tarr's land and building as of 1989, and multiplied that by ten percent (10%) which represented Ferland's assigned value as the impact on the remainder of Burke-Tarr's property. This equation is as follows:
 $367,300.00 x 10% = $36,730
 $36,730 + 5% to June = $38,566.00
Therefore, this Court finds as a fact that the plaintiff, Burke-Tarr is entitled to the fair rental value of the seven and one-half (7.5) foot by two hundred and eighteen (218) foot strip of realty, plus the fair rental value of the realty for installation of the waterline, plus the adverse effect on the remainder of Burke-Tarr's fee estate as a result of the installation and use of the waterline which resulted in more noise and congestion. This equation is as follows:
$16,552.99 + $11,586.75 + $38,566.50 = $66,706.24
Judgment shall be entered for the plaintiff in the amount of $66,706.24, plus interest and costs.
III. Plaintiff's request for attorney's fees and costs pursuant to R.I.G.L. § 34-7-7.
Plaintiff, Burke-Tarr has petitioned this Court for costs pursuant to this statute:
 34-7-7. Action by claimant in possession after notice of intent to dispute. — Whenever notice is given to prevent the acquisition of lands or way, privilege or other easement, as aforesaid, such notice shall be considered so far a disturbance of such right or claim as to enable the party claiming to bring an action for disturbing the same, in order to try such right; and if the plaintiff in such suit prevails, he shall recover full costs.
Burke-Tarr argues to this Court that the language set forth in R.I.G.L. § 34-7-7 is mandatory and not permissive, and as such, entitled Burke-Tarr to attorney's fees. Conversely, Ferland argues that the word "cost" as stated in R.I.G.L. § 34-7-7
standing alone cannot be interpreted to award Burke-Tarr attorney's fees. The general rule is that one may not recover attorney's fees in the absence of a statutory or contractual liability therefore. Washington Trust Company v. Fatone,106 R.I. 168 (1969). Absent express statutory authority, counsel's fees are not awarded as part of the costs of litigation. Waldek v.Piner, 488 A.2d 1218, 1220 (R.I. 1985). The Rhode Island Supreme Court has stated in Waldek, 488 A.2d at 1220, that the word costs without more will not be interpreted to include attorney's fees. Citing DiIorio v. Cantone, 49 R.I. 452, 454 (1929). An example of a statute that does provide for attorney's fees is R.I.G.L. §15-8-25. This Section provides as follows:
 "Costs — If the Court makes an order declaring paternity and for the support of maintenance and education of the child, including the costs of legal services of the attorney representing the petitioner, expert witness fees, and all other costs shall be taxed against the defendant." emphasis added.
In the case at bar, the defendant's counterclaim for possession of the easement by proscription, which was denied in the case in chief, is the only nexus for the plaintiffs request for attorney's fees or costs pursuant to R.I.G.L. § 34-7-7.
In accordance with the analysis above, the plaintiff is clearly not entitled to attorney's fees for the prosecution of this case. A claim for costs can only be predicated on the statutory claim afforded by R.I.G.L. § 34-7-7.
Inasmuch as the defendant's counterclaim for possession by adverse possession was de minis with respect to the substantive issues presented in this case, and would be a minute if not indiscernible percentage of the total costs in this case, this Court declines to award costs pursuant to this statute.
The plaintiff has asked this Court to establish guidelines for a future course of dealings between plaintiff and defendant over the use of the subject easement inasmuch as there currently exists no lease between the parties particularly with regard to the existence of the water pipes beneath and through portions of the easement.
Equity demands that that which ought to be done should be done. This Court is without jurisdiction to fashion an order with regard to this subject which would govern the actions of the parties in the future.
Prudence would dictate that a reasonable agreement could be devised, in light of the assessment of damages in this case, to govern the future cause of dealings between the parties.
Counsel shall prepare the appropriate judgment consistent with this Court decision.