Kevin SWEET

v.

TOWN OF WEST WARWICK.

Town of West Warwick

v.

Kevin Sweet et al.

No. 2002–612–Appeal.

Supreme Court of Rhode Island.

February 11, 2004.

Frederick A. Costello, Esq., Warwick, for Plaintiff.

Peter J. Cirelli, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG and SUTTELL, JJ.

## OPINION

PER CURIAM.

The defendant, the town of West Warwick (town), appeals from a Superior Court judgment in favor of the plaintiff, Kevin Sweet (plaintiff),[1] in this action for the assessment of damages after the town took the plaintiff's two multi-unit properties through eminent domain. On appeal, we consider whether the trial justice applied the appropriate method for calculating the fair market value of the properties. Because the trial justice based her finding of fair market value on a proper weighing of the evidence presented by both parties, we affirm the judgment of the Superior Court.

This case came before the Supreme Court for oral argument on December 1, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time.

---

1. The parties have taken on schizophrenic roles throughout this proceeding. This controversy began with the town's petition to deposit the fair market value of the subject properties into the Registry of the Superior Court. At that time, the town was identified as the plaintiff and Sweet was the defendant. Thereafter, Sweet filed a separate petition for damages and, in that case, Sweet was the plaintiff and the town was the defendant. After the matters were consolidated, judgment entered in favor of Sweet. That judgment refers to Sweet as the plaintiff and the town as the defendant. We follow the alignment indicated on the judgment and refer to Sweet as the plaintiff and the town as the defendant.

## I

## Facts and Travel

The subject properties are located at 21 Ottawa Street (Ottawa property) and 11 Roosevelt Street (Roosevelt property) in the Town of West Warwick. The Ottawa property is described as a five-unit tenement-style residence with 4,800 square feet of living space. The Roosevelt property is an 8,500 square-foot, seven-unit apartment complex.

The plaintiff[2] purchased both properties in 1993 when they were in a state of disrepair. According to plaintiff, his plans to rehabilitate the properties were derailed when he became involved in a legal dispute over their control and they wound up under the supervision of a court-appointed management company. The plaintiff regained control over the properties in the fall of 1998. At that time, the properties needed at least cosmetic repair and were not fully rented. After doing some needed work, plaintiff was able to rent all the units in both buildings. The Roosevelt property was generating approximately $2,825 in rent each month, while the Ottawa property generated $2,400 per month.

In January 1999, the West Warwick Town Council approved a declaration of eminent domain, taking the subject properties to construct a new post office. On April 1, 1999, the Superior Court entered an order of condemnation and directed the town to deposit the fair market value of the properties into the registry of the court. The town deposited $100,000 for the Roosevelt property and $90,000 for the Ottawa property. Believing that he was not paid just compensation for his properties, plaintiff initiated the instant action against the town.

At trial, plaintiff and the town presented experts to ascertain the fair market value of the properties. The plaintiff presented James A. Houle (Houle), a professional real estate appraiser. He testified that he examined the two properties in January 1999 and found them to be in average to good condition. Houle explained that he used three methods of determining the value of the properties. First, he described the "income approach" to valuation. Under that method, Houle calculated the yearly rents that each property generated and deducted a 6.5 percent vacancy rate and expenses. Based on that calculation, he determined that the value of the Roosevelt property was $184,000 and the value of the Ottawa property was $147,000. The town did not object to plaintiff's use of the income approach.

Houle also testified that he looked to evidence of comparable sales to ascertain the values of the properties. Under this method, Houle calculated the per room, per area and per unit values of three multi-unit buildings that recently were sold in the area. Applying those figures to the subject properties, Houle opined that comparable sales indicated that the value of the Roosevelt property was $175,000 and the value of the Ottawa property was $147,000.

Houle then explained the cost approach to valuation. He testified that, under the cost approach, fair market value is determined by estimating the cost of the land and the reproduction cost of the structure. Under this approach, Houle believed that the Roosevelt property was worth $195,028 and the Ottawa property was worth $170,600.

---

2. The plaintiff and his business partner, Gerald Cote (Cote), were both owners of the subject properties when the town took them by eminent domain. Cote has been defaulted in this action and is not a party to this appeal.

To determine the fair market value of the properties, Houle compared these values. Giving greater weight to the income and market approaches, Houle concluded that the Roosevelt property had a fair market value of $180,000 and the Ottawa property had a fair market value of $145,000.[3]

The town then presented its expert real estate appraiser, Gerald M. Roch (Roch), to testify about the fair market value of the properties. Roch had inspected the two properties in the spring of 1998. He said that, at that time, he found four of the seven units at the Roosevelt property vacant. He also noted that two of those units were in a state of disrepair, with broken windows and graffiti on the walls. Nevertheless, Roch described that property as being in "average" condition. The Ottawa property, according to Roch, was in better condition than the Roosevelt property.

Roch also described the comparable sales and income approaches to ascertain fair market value. In valuing the subject properties by the income method, Roch projected their income potentials by comparing rents that were generated by similar rental apartments. With respect to a vacancy rate, however, Roch looked to the subject properties themselves. Based on his 1998 observation of the Roosevelt property, Roch attributed a 20 percent vacancy rate to his calculation of the value of that property. Roch attributed a 10 percent vacancy rate to the Ottawa property. Roch then determined that, under the income formula, the value of the Roosevelt property was $96,200 and the value of the Ottawa property was $90,300.

Roch, however, explained that the "real proof of value of multi-units relies" on evidence of comparable sales. Using the comparable sales method, Roch looked to recent sales of what he determined were similar multi-unit properties. Unlike Houle, Roch compared the Roosevelt property to three properties that recently had sold in the area and the Ottawa property to another group of three properties that recently had been sold. Under the comparable sales method, Roch concluded that the Ottawa property was worth $90,000 and the Roosevelt property was worth $100,000.

After the parties rested, the trial justice found that plaintiff sustained his burden of proving that he was not paid just compensation for his condemned properties. In determining the fair market values of the properties, the trial justice refused to consider the values derived from either expert's use of the sales approach. According to the trial justice, Roch and Houle disagreed about what transactions and properties would be appropriate for a comparable sales calculation. Viewing their testimony together, the trial justice concluded that neither expert provided a "clear picture" of the value of the properties using the comparable sales method and that "neither side appeared sufficiently credible with reference to their opinions on comparable sales." Having rejected both parties' proffered evidence of comparable sales, the trial justice determined that the income approach was the most appropriate method of ascertaining the fair market value of the properties.

Employing the income formula, the trial justice found that Roch used an artificially inflated vacancy rate because his rate was based on his 1998 observation of the properties, which was before plaintiff gained control of the units, reconditioned them and fully rented them. Applying the 6.5

---

3. The trial justice improperly found that both Houle and the town's expert, Roch, completely ignored the cost approach when determining fair market value.

percent vacancy rate described by Houle, the trial justice found that the fair market value of the Roosevelt property was $150,064.32 and that the fair market value of the Ottawa property was $127,591.85.

The town's motion for a new trial was denied, and judgment was entered in favor of plaintiff. The town timely appealed, arguing that the trial justice erred in failing to employ the sales method in determining the fair market value of the properties. We disagree and affirm the judgment.

## II

### Fair Market Value

■■■ Findings of fact made by a trial justice sitting without a jury are afforded great deference. *Warwick Musical Theatre, Inc. v. State*, 525 A.2d 905, 909 (R.I. 1987). On appeal, this Court will not disturb such findings unless the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *Id.* at 910.

■■■ Article 1, section 16, of the Rhode Island Constitution provides that an individual whose property is taken pursuant to a government entity's eminent domain powers is entitled to just compensation. "It is well settled that the measure of damages to be awarded as just compensation for the condemnation of private property is the fair-market value of the property as of the date of the taking." *Serzen v. Director of the Department of Environmental Management*, 692 A.2d 671, 673 (R.I.1997). An individual disputing the condemning authority's offer should receive "just compensation but not a penny more." *Id.* at 674 (quoting *Nasco, Inc. v. Director of Public Works*, 116 R.I. 712, 721, 360 A.2d 871, 876 (1976)).

■■■ This Court has consistently held, and continues to hold, that evidence of comparable sales is the preferred indicator of fair market value. *See, e.g., Warwick Musical Theatre, Inc.*, 525 A.2d at 910. The comparable sales inquiry looks to the

" 'prices paid in the open market at or about the time of the taking for substantially similar and comparable properties, when available and when proper adjustments can be made for minor differences between the properties.' *J.W.A. Realty, Inc. v. City of Cranston*, 121 R.I. 374, 380, 399 A.2d 479, 482 (1979). 'Significant factors that affect comparability include location and character of the property, proximity in time of the comparable sale, and the use to which the property is put.' *Warwick Musical Theatre, Inc. v. State*, 525 A.2d 905, 910 (R.I.1987)." *Serzen*, 692 A.2d at 674.

Generally, when evidence of comparable sales is available, other methods of deducing fair market value should not be employed. *Id.* ("The availability of comparable-sales evidence 'will generally serve to exclude the use of other methods of deducing fair-market value.' ").

■■■ Evidence of comparable sales is preferred because such figures provide the best evidence of fair market value. *Corrado v. Providence Redevelopment Agency*, 117 R.I. 647, 653, 370 A.2d 226, 229 (1977). "When evidence of comparable sales is not available or is inappropriate," however, other methods of valuation may be employed. *Warwick Musical Theatre, Inc.*, 525 A.2d at 910.

■■■ However, out of an overriding concern for awarding just compensation, the finder of fact may deviate from the comparable sales method of valuation when the evidence of comparable sales is "no longer probative." *Corrado*, 117 R.I. at 657, 370 A.2d at 231.

■ We are of the opinion that the trial justice properly deviated from the comparable sales approach because the evidence before the court, as presented by both parties, was found to be unreliable and was, therefore, "no longer probative." *Id.* In commenting on the weight of the evidence of comparable sales, the trial justice noted that both experts disagreed about the comparability of the sales relied on by each expert. Essentially, Roch and Houle undermined each other's credibility on that issue. With respect to the income formula, however, both experts largely agreed. The differences in the figures derived by Houle and Roch based on the income approach were attributed to the conflicting vacancy rates each expert used. The trial justice's decision to accept Houle's estimated vacancy rate is supported by the record.

■ Moreover, not only did the town fail to object to the admission of evidence of income derived by the subject properties, but its own expert, Roch, offered his opinion about the fair market values of the properties based on the income formula. Additionally, in its pretrial memorandum submitted to the Superior Court, the town argued that its appraiser "used approved *methods*" to determine fair market value, including the income formula. (Emphasis added.) Neither this memorandum, nor the town's post-trial memorandum indicates that use of the income formula was inappropriate. The town's failure to object to the introduction of evidence of income, and its explicit reliance on the income-producing potential of the properties is important in this case. The town effectively waived its right to contest the use of the income evidence over the preferred use of comparable sales. "The trial justice, sitting as factfinder, determines the weight to be given the testimony." *Warwick Musical Theatre, Inc.*, 525 A.2d at

911. Once evidence of income was admitted in evidence without objection, the trial justice could and did make findings of fact about which evidence was more convincing. *Id.* Therefore, the trial justice was not clearly wrong in deeming the expert calculations based on the income formula to be controlling here. In so finding, she performed her duties of assuring that plaintiff received just compensation from the condemning authority. *See Corrado*, 117 R.I. at 657, 370 A.2d at 231.

■ Our affirmation of the trial justice's application of the income approach should not be construed as a retreat from our well-established rule that evidence of comparable sales should be used to the exclusion of other methods of valuation. Our holding in this case is not based on a determination that the subject properties were unique or used for a special purpose. *See Corrado*, 117 R.I. at 657–58, 370 A.2d at 231–32 (holding that a building that was over 200 years old, "contained features of apparent historical interest including wainscotting, elaborate cornices, large fireplaces, and an unusual staircase" was unique); *Assembly of God Church of Pawtucket, R.I. v. Vallone*, 89 R.I. 1, 10, 150 A.2d 11, 15 (1959) (holding that a church and rectory were specialty properties); *Hall v. City of Providence*, 45 R.I. 167, 168, 121 A. 66, 66 (1923) (holding that a seventy-one-acre country estate/farm with three "houses, a garage, a water supply system, an acetylene gas plant, ice house, barns, several young orchards and other appurtenances" was unique). Rather, we merely hold that, when evidence of the income-producing ability of a subject property is offered in evidence by both parties without objection, the trial justice properly may employ the income method of valuation if evidence of comparable sales is deemed unreliable. In this case, the trial justice did just that. Therefore, we dis-

cern no error in her findings of fact or conclusions of law.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

Justice FLAHERTY did not participate.